UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTINE CORNELL<br><br>           Plaintiff<br><br>    v.<br><br>GETTY IMAGES, INC.<br><br>           Defendant | No<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT**<br><br><br>**JURY TRIAL REQUESTED** |

Plaintiff Christine Cornell ("Ms. Cornell"), by and through her undersigned attorney, alleges as follows:

**I.     NATURE OF THE ACTION**

1.     Plaintiff Christine Cornell brings this action to recover damages resulting from copyright infringements by defendant Getty Images (US), Inc. ("Getty Images") of original courtroom drawings ("Cornell Drawings") created by her, and to enjoin future infringements by defendant of the Cornell Drawings.  Defendant Getty Images has reproduced, displayed,

COMPLAINT – PAGE 1

1  distributed and otherwise misused the protected images on its website and licensed others to use

2  the Cornell Drawings without authorization and without paying Ms. Cornell the required

3  commercial license fee. Getty Images has engaged in the unauthorized transmittal, display, and

4  reproduction of more than fifty of the Cornell Drawings on its website ("Infringing Images").

5  Such Infringing Images were made available for distribution and distributed through Getty

6  Images to its subscribers, customers and a la carte purchasers for editorial and commercial uses.

7       2.   This unauthorized transmission, display, distribution by sale or license and

8  reproduction of the Cornell Drawings and the Infringing Images without authorization

9  constitutes violation of Ms. Cornell's exclusive rights under 17 U.S.C. §106.

10      3.   Moreover, Getty Images' addition of the embedded watermark and Getty Images

11 credit line constitutes a knowing false representation of copyright management information

12 ("CMI")  to conceal it's copyright infringement in violation of the DMCA §1202 (a).

13                              **II.    PARTIES**

14      4.   Plaintiff Christine Cornell is an individual domiciled in Weehawken, New Jersey.

15 She is widely recognized as a preeminent court room illustrator. As a courtroom illustrator for

16 more than three decades, Ms. Cornell has been privileged to cover almost every high-profile or

17 celebrity trial in New York, Connecticut and New Jersey from the mid-seventies.  Often her

18 illustrations are the only visual records of the courtroom drama unfolding before her and thus,

19 are highly sought after by the media with it voracious appetite for images.

20      5.   Defendant Getty Images (US), Inc. is a New York corporation engaged in the

21 stock photo business with its executive offices in Seattle, Washington. Upon information and

22 belief, Getty Images is also incorporated in Seattle as "Getty Images Seattle."

23

COMPLAINT – PAGE 2

### III.   JURISDICTION AND VENUE

6. This Court has jurisdiction over this action, pursuant to 28 U.S.C. §1331 and 1338(a), as this action involves claims brought under federal law, the Copyright Act, 17 U.S.C §101, *et seq*. This court also has diversity jurisdiction under 28 U.S.C.§1332 as Ms. Cornell and Getty Images are citizens of different states and the amount in controversy exceeds the sum or value of seventy-five-thousand dollars ($75,000.00).

7. Defendant is subject to personal jurisdiction in this Court because the principal place of business (the executive offices) are located in Seattle, Washington.

8. Venue is also proper in the Western District of Washington, pursuant to 28 U.S.C. §139 (b)(2) - (3), because, upon information and belief, a substantial part of the events or omissions giving rise to the claims asserted in this Complaint occurred in the District. Venue is also proper in this District, as the defendant "resides" in Seattle, Washington. Upon information and belief, licensing and intellectual property matters of Getty Images are handled in Seattle. The Infringing Images were distributed and sold throughout the United States, Canada and the United Kingdom.

### IV.   FACTUAL BACKGROUND

Getty Images

9. Getty Images licenses content for a wide variety of uses, including use online, in websites, books, newspapers, magazines, television and film productions, advertisements, marketing materials, products and packaging. Getty Images generates revenue from licensing the rights to use its content, including imagery, and from providing related services.

1      10.      Getty Images delivers virtually all of its content digitally. Visitors to Getty

2   Images' website, www.gettyimages.com, can search through and view images and obtain

3   licenses for those images online.

4      11.      In 2003 and in subsequent license agreements thereafter, Agence France-Presse,

5   described in the agreement as a Paris based news service with offices at 11-13 Place de la

6   Bourse, Paris, France 75002 ("AFP"), and Getty Images (US), Inc., described in the agreement

7   as "a New York corporation with its principal place of business at 601 N 34 Street, Seattle,

8   Washington 98103" entered into a strategic and unique content partnership by which *inter alia*

9   AFP grants to Getty Images the exclusive rights to AFP's images in North America to market,

10  license and sublicense to users, subscribers and customers. Under the agreement, AFP

11  transferred its digital archive and collections to Getty Images and granted Getty Images

12  exclusive rights to distribute, reproduce and sell the AFP collection for the United States, Canada

13  and the United Kingdom *inter alia* in consideration for the payments of royalties and annual fees.

14      <u>Christine Cornell and AFP</u>

15      12.      AFP was a client of Ms. Cornell's from the 1990's. One the occasion when Ms.

16  Cornell sold Cornell Drawings to AFP, AFP acquired from Ms. Cornell a non-exclusive license

17  to distribute courtroom drawings based on a payment to her of a day rate or license fee as direct

18  news copy on AFP's real time news. The parties understood that the Cornell Drawings were

19  licensed on a non-exclusive basis to AFP for transmission to the subscribers to its wire service

20  for editorial one time use only. The parties understood that the Cornell Drawings could not

21  subsequently be sold, licensed or sublicensed.

22      13.      The only writing between AFP and Ms. Cornell was in the form of a written

23  invoice following AFP's order of an image for use on the wire service or AFP's payment of a

COMPLAINT – PAGE 4

1    day rate to attend a courtroom proceeding in exchange for a non-exclusive right to distribute the

2    images from that day through the wire service.

3        14.    Customarily, Ms. Cornell submitted a written invoice to AFP following AFP's

4    use of the licensed image. Her course of dealings, custom and usage and the intent of the parties

5    was that the image would be distributed through the wire service and the fee was for the one time

6    editorial use of the Cornell Drawing. Copies of some of the invoices are attached hereto as

7    Exhibit A.

8        15.    Ms. Cornell has very limited licenses AFP until 2009 when her day engagements

9    for AFP increased. The Infringing Images which appeared on Getty Images' website on January

10   13, 2013 represent no more than nineteen (19) days, based on the invoices in Ms. Cornell's

11   custody and control and are as follows:

12           1993 – Two (2) days

13           1995 – One (1) day

14           1998 – One (1) day

15           2001 – One (1) day

16           2009 – Five (5) days

17           2010 – Eight (8) days

18           2011 – One (1) day

19       16.    Ms. Cornell at all times worked as an independent contractor. She was never

20   "AFP staff."

21       17.    On June 02, 2010, Christine Cornell sent an email to Eva Hambach:

22           "Hello Eva, You know I love working with you and am very happy

23           to have found AFP, but I need to clarify something about how I work,

1       and what happened last week,. When I called you about El Hanassi, and

2       you equivocated about wether you could use it, I knew I was sending you

3       the drawing on spec. I was covering it anyway, so i could afford to

4       gamble. It was nice when you said yes. The problem I have with your

5       telling me the next day that you had changed your mind is that now you

6       have it, who is to say it might not pop up for later use."

7    18.   On June 3, 2010, Eva Hambach, Deputy Director of AFP in Washington

8 responds:

9       "OK-No problem Christine with billing me for Tuesday. I think that's perfectly

10 fair. It was a long day and it's not your fault if everything got cancelled after we agreed

11 on coverage. Now for El Hanassi, I was looking for the image the very next day you

12 sent it but the desk had already killed it out of the system to avoid confusion. Really, I

13 understand your concerns and it makes perfect sense and I would hate for you not to

14 be paid for an image we use. The last sketches in our system from you are Faisal

15 Shahzad and Sabirhan Hasanoff and these sketches were transmitted to the whole

16 world."

17    <u>Christine Cornell and Getty Images</u>

18    19.   Ms. Cornell has had only two (2) transactions with Getty Images and had no

19 writing or agreement with Getty Images other than the invoice referred to in paragraph 20.

20    20.   Upon information and belief, on or about August 24, 2004, Getty Images sent Ms.

21 Cornell a W-9 for a courtroom drawing of Doug Faneuil, Martha Stewart's investment banker

22 and co-defendant. Ms. Cornell invoiced Getty Images for the Faneuil drawing but never received

23 any payments from Getty Images in 2004.

1    21.    Ms. Cornell also received a W-9 in 2010 from Getty Images in connection with an

2  order of a courtroom drawing on May 18, 2010 of Faisal Shahzad at the time of a brief court

3  appearance. A copy of both W-9's, the invoice to Getty Images for the May 18, 2010 and receipt

4  of payment for the May 18, 2010 order is attached hereto as Exhibit B.

5    22.    On that same day, AFP also ordered from Ms. Cornell the May 18, 2010 Faisal

6  Shahzad courtroom drawing and paid an extra fifty dollars to Ms. Cornell for the right to

7  distribute it on television. A copy of the AFP invoice is attached hereto as Exhibit C.

8    23.    On only one other occasion, November 20, 2009, Ms. Cornell exchanged an email

9  with a Sandy Ciric of Getty Images in relation to the Sheik Mohammad trial. In the context of

10  calls made to clients to cover the trial, Ms. Cornell learned from Eva Hambach that AFP would

11  provide through AFP wire service any images of the trial to Getty Images until that conversation,

12  Ms. Cornell did not know that AFP distributed any of her drawings through the wire service to

13  AFP and on the only two occasions (Faneuil and Shahzad), she dealt directly with Getty Images.

14  In the latter, both AFP and Getty Images placed orders.  (The trial in fact never took place.)

15    Defendant's Wrongful Conduct

16    24.    On or about January 13, 2013, after being informed by her webmaster that he had

17  discovered her drawings on the Getty Images website, Ms. Cornell visited the Getty Images

18  website.  Ms. Cornell discovered for sale and licensing on www.gettyimages.com a portfolio of

19  more than fifty reproductions of the Cornell Drawings ("Infringing Images").  A screenshot of

20  the four (4) pages of the website with the Infringing Images as it appeared on January 22, 2013

21  as well as screenshots of the individual Infringing Images and the data attached hereto as Exhibit

22  D.

25.   A Google search of the internet indicated that Getty Images had licensed the Infringing Images to various news media and others. By way of example and not limitation, the screenshots of the Infringing Images downloaded by Ms. Cornell's assistant as they appeared from a Google search on for about January, 2013 are attached hereto as Exhibit E.

26.   Ms. Cornell, after discovering the Infringing Images on the Getty Images website, on or about January 21, 2013, contacted Agence France Presse ("AFP"). Almost all of the Infringing Images on the Getty Images website were marked as "AFP collection".

27.   On or about January 21, 2013, Ms. Cornell called Eva Hambach at AFP. Eva Hambach stated in substance that AFP should not have transferred the rights to the Cornell Drawings to Getty Images for display, reproduction and further distribution. Notwithstanding, she did state that the Cornell Drawings had been limited to editorial use and the conditions required credit to her. Ms. Cornell stated that she did not want Getty Images to sell her images of her drawings.

28.   Following that conversation with Eva Hambach on or about January 22, 2013, Hambach confirmed to Ms. Cornell by email that the Cornell Drawings and Infringing Images would be removed from the Getty Images website, however the Infringing Images continued to be displayed by third party licensees on their internet websites.

29.   The majority of the Infringing Images marked AFP Collection were removed from the Getty images website

Getty Images Theft of Cornell Images

30.   On or about January 22, 2013, the Infringing Image of Mohammad Alessa and Carlos Almonte ("Alessa Image") was available on the Getty Images website for license. The Alessa Image is identified as #14694710, June 07, 2010. It is credited AFP/AFP.

1   31.     On or about June 09, 2010, Ms. Cornell sent an invoice for the Alessa Image to

2   AFP. A copy of the invoice and receipt of payment is attached hereto as Exhibit F.

3   32.     Following Eva C. Hambach's representation to Ms. Cornell that the Infringing

4   Images has been removed from the website, Ms. Cornell did a search of the Getty images

5   website. An Alessa Image credited to Getty Images with a different Getty Images number had

6   replaced the prior Alessa Image credited to AFP/AFP. Attached hereto as Exhibit G is a

7   screenshot of the Alessa Image as it later appeared on the Getty Images website identified as

8   #101692587, June 07, 2010.

9   33.     Subsequent to Cornell's notification of the unauthorized use of the Alessa Image

10  on the Getty website and Getty's takedown of the Alessa Image, a screenshot made by Ms.

11  Cornell on February 2013 shows that Getty Images had replaced the first Alessa Image with a

12  duplicate Alessa Image with a different number.  Cornell is listed as the Courtroom Illustrator.

13  Attached hereto as Exhibit H is the second Alessa Image and the Alessa Image as it was as it

14  appeared on June 17, 2013 in an article in the New Jersey paper about their sentencing.

15  <u>Najibullah and Zazi</u>

16  34.     Attached hereto as Exhibit I is a courtroom drawing of Najibullah, which

17  appeared on the Getty images website in January, 2013. The image was still on display on the

18  internet on June 12, 2013 notwithstanding, Getty Images' Counsels' representation that all

19  licensees of the images had been requested to take down the Christine Cornell Infringing Images

20  obtained from Getty Images.

21  <u>Martha Stewart</u>

22  35.     Getty Images' theft of the Martha Stewart image ("Stewart Image") has a

23  different pedigree.  The Stewart Image does not come from the AFP collection.  Documentation

COMPLAINT – PAGE 9

attached hereto as Exhibit J shows Ms. Cornell in front of the Courthouse with the Stewart Image.

36. Ms. Cornell has invoices of the Cornell Drawings sold and the price paid by her clients for the non-exclusive license. The Stewart Image was not sold to AFP or to Getty Images. Attached hereto as Exhibit K, are screenshots of the Stewart Image. The Stewart Image was sold on or about July 16, by Ms. Cornell for a total of three-thousand-five-hundred dollars ($3,500.00) to the following entities:

    WABC – $350.00

    ABC – $350.00

    NBC News – $400.00

    CNN – $350.00

    ET – $400.00

    CBS – $350.00

    WADH – $350.00

    E! – $600.00

37. On or about January 22, 2013, the Stewart Image was displayed on the Getty Images website and was available for purchase. Upon information and belief, following the removal of the Infringing Images from the Getty images website by AFP, Getty Images added new images to its website, *inter alia* Martha Stewart available by a search "Christine Cornell." Upon information and belief, Getty Images failed to use due diligence to ascertain its rights to the Stewart Image acting in reckless disregard of Ms. Cornell's rights. Getty Images had also displayed and offered to distribute the Alessa Images and an image of Neblu Zeolde Demeke,

COMPLAINT – PAGE 10

The Hoffman Law Firm
330 W 72 Street
New York, NY 10023
T: 212-873-6200  F: 212-974-7245

which had not previously appeared. The images as they appeared on the website on February 10, 2013 are attached hereto as Exhibit L.

38. The infringing Stewart Image and Alessa Image were available for license and sale on the Getty Images website for editorial and commercial purposes. A mock "*a la carte*" purchase carried out by Ms. Cornell for the Stewart Image and the Alessa Image are attached hereto as Exhibit M. Both images were listed as Rights Managed and were available at different end user rates as a function of the uses selected. Ms. Cornell notifies Getty Images.

39. Following Ms. Cornell's notification to AFP on or about January 21, 2013, Ms. Cornell's attorney wrote a letter to John Lapham, General Counsel of Getty Images on March 23, 2013, setting for in detail and with accompanying scanned photographs and screenshots.

40. Ms. Cornell's counsel wrote several other letters to Getty Images' designated outside Counsel, one to represent Getty images with respect to its unauthorized use of the Cornell Drawings provided by AFP and the other to represent Getty Images with respect to non-AFP provided images.

41. To date, Getty Images' counsel have failed to provide requested information on the license and sale of AFP provided images and failed to provide any information about Getty Images' gross revenues received from the sale of the Cornell Drawings, with respect to the Shahzad and Stewart images

42. Getty Images' counsel for the non-AFP Infringing Images has provided sales data for such images. In a separate email attached hereto as Exhibit N, she provides an email sent by a Getty Images employee to a customer informing them that image number 52025164 (See Exhibit D, page 10) is no longer available for use. The Cornell Drawing was licensed to AFP in 1998 for a non-exclusive one time editorial use and the copyright indicates "AFP 2012." Although Getty

COMPLAINT – PAGE 11

1  Images had been on notice as early as January 23, 2013 that it did not have rights to the Cornell

2  Drawings, not until May 16, 2013 did it notify one subscriber.

3  43.  Upon information and belief, Getty Images subscribers and *a la carte* purchasers

4  and subscribers have not been notified of their infringing uses and requested to take down the

5  Infringing Images. Getty Images' End User License Agreement ("EULA") gives Getty Images

6  the right to request that such users take down infringing images.

7  44.  Getty Images has acquired rights to numerous archives and collections. Upon

8  information and belief, Getty Images has engaged in a pattern and practice of failing to use due

9  diligence to confirm its copyrights in these collections and has acted in continuing reckless

10  disregard of content creators rights in these collections.

11  **V.  FIRST CAUSE OF ACTION FOR DIRECT**

12  **COPYRIGHT INFRINGEMENT**

13  45.  Ms. Cornell incorporates by reference paragraph 1 through paragraph 44 above as

14  if fully set forth herein.

15  46.  Ms. Cornell is, and at all relevant times has been, the owner of the copyright of

16  the Cornell Drawings.

17  47.  Each Cornell Drawing is copyrightable subject matter under 17 U.S.C. §102

18  (a)(5)

19  48.  Ms. Cornell has complied in all respects with the provisions of the Copyright Act

20  and all regulations thereunder.

21  49.  On or about March 8, 2013, Ms. Cornell obtained copyright registration

22  certificates #VA 1-849-138 and #VA 1-84-208 for the Cornell Drawings of Martha Stewart and

23  Mohammad Alessa and Almonte. The registration certificates are attached hereto as Exhibit O.

COMPLAINT – PAGE 12

50. On or about March 8, 2013, Ms. Cornell filed for registration certificates for the Cornell Drawings of: Arraignment of Wahli Khan, Ramsi Yuseff Sentencing, African Terrorist Al Owali Arraignment, Mohammad Rashid Daoud al Owali, Bernie Madoff Sentence (two images), David Friehling Maddoff Accountant, Frank DiPascali, PENA Arraignment, Ahmad Wais, Adis Medunjanin, Colleen Larose, Sabirhan Hasanoff, Zarein Ahmedazy, Zazi Plea, Affia Seddiqui, Victor Bout, PENA, Luis Armand Soltren Pena. The registration certificate receipt #1-EXJ8ZV is attached hereto as Exhibit P

51. On or about May 24, 2013, Ms. Cornell filed for registration certificates for the Cornell Drawings of Faisal Shahzad Courtroom Arraignment and Faisal Shahzad Courtroom Sentencing. The registration certificate receipts #1-FJTFVB and #1-FJTFVE are attached hereto as Exhibit Q.

52. Ms. Cornell has the exclusive rights under 17 U.S.C. § 106 to (1) reproduce the Cornell Drawings, (2) prepare derivative works based on the Cornell Drawings, (3) distribute copies of the Cornell Drawings, and (4) display the Cornell Drawings publically.

53. Without the permission or consent of Ms. Cornell, Cornell Drawings were reproduced, derivative works were made, copies were distributed, and the Cornell Drawings were displayed on the Getty Images website.

54. Beginning at a time unknown and continuing to the present, defendant Getty Images has engaged in repeated, unlawful acts and practices, which have included extensive infringements of copyrights in the Cornell Drawings.

55. As a direct and proximate result of the copyright infringement detailed herein, Ms. Cornell has been and continues to be damaged in an amount unknown at present and to be

1  determined at trial.  Defendant has garnered and/or will garner infringing profits in an amount

2  presently unknown, which profits should be disgorged to Ms. Cornell.

3        56.    Ms. Cornell has suffered and will continue to suffer substantial and irreparable

4  damage to her business reputation and goodwill as a result of defendant's infringement. In

5  addition to its actual damages, Ms. Cornell is entitled to an award of any profits made by

6  defendants from their wrongful acts pursuant to 17 U.S.C. §504.

7        57.    Ms. Cornell has no adequate remedy at law to protect her rights in the Infringing

8  Images and to prevent Defendant from continuing to infringe the Infringing Images and to injure

9  Ms. Cornell.  Ms. Cornell has suffered and is continuing to suffer irreparable injury from the

10  Defendant's conduct as alleged.

11        58.    As a direct and proximate result of the copyright infringements detailed herein,

12  Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Getty

13  Images from infringing her copyright.

14        59.    Ms. Cornell has no adequate remedy at law for defendant's wrongful conduct in

15  that: (1) the subject images are unique and valuable properties; (2) defendants' infringements

16  interfere with Ms. Cornell's goodwill and customer relations; and (3) defendant's infringements

17  and damage resulting therefrom are continuing Ms.  Cornell is entitled therefore to injunctive

18  relief pursuant to 17 U.S.C. § 502, and an order impounding all infringing materials pursuant to

19  17 U.S.C. § 503.

20        **VI.**    **SECOND CAUSE OF ACTION**

21        **CONTRIBUTORY COPYRIGHT INFRINGEMENT**

22        60.    Ms. Cornell incorporates by reference paragraph 1 through paragraph 44 above as

23  if fully set forth herein.

61.     Getty Images' subscribers, clients, members, and customers rely on Getty Images to collect and distribute images for their use. Getty Images disseminated the Infringing Images to enable further publication. Defendant Getty Images have encouraged, assisted, induced, caused, and/or materially contributed to a vast number of actual or imminent copyright infringements of the Infringing Images in violation of 17 U.S.C. §§ 106 and §501.

62.     Defendant has promoted and promotes infringement through the licensing and sale of the Infringing Images to third parties and continues to promote this infringement by its failure to inform third parties with whom they have license agreements that their display, transmission and reproduction of the Infringing Images constitutes copyright infringement.

63.     Defendant knows or has reason to know that Ms. Cornell owns the copyright in the Infringing Images.

64.     The infringements of Ms. Cornell's Infringing Images that Defendant has encouraged, assisted, induced, caused and/or materially contributed to through the conduct described above is without Ms. Cornell's consent and not otherwise permissible under the Copyright Act.

65.     The foregoing acts of infringement by Defendant have been willful, intentional, purposeful, and with indifference to Ms. Cornell's rights under the Copyright Act.

66.     Ms. Cornell is entitled to recover from Defendant the damages, including attorneys' fees, it has sustained and will sustain, and any gains, profits and advantages obtained by Defendant as a result of their acts of infringement alleged above. At present, the amount of such damages, gains, profits and advantages cannot be fully ascertained by Ms. Cornell, but will be established according to proof at trial.

67. Defendant has promoted, facilitated, and enabled—and continue to promote, facilitate, and enable—third party purchasers of the Infringing Images to copy, display, reproduce and distribute the Infringing Images by the sale and license of the Infringing Images and failing to exercise its contractual rights under EULA to inform third party users of their infringing uses and request that it cease and desist.

68. Third parties have in fact licensed various uses of the Infringing Images from AFP/Getty, and used, sold and/or displayed such Infringing Images without Ms. Cornell's authorization, thereby infringing Ms. Cornell's copyrights.

69. Getty Images induced and promoted third parties' infringement of Ms. Cornell's copyright.

70. Getty Images is liable for the acts of infringement that result from the third parties' use of the Infringing Images.

71. The talent, skill and effort required to create these courtroom drawings is one on which the media has come to rely and the source of Ms. Cornell's livelihood.

## VII.   THIRD CAUSE OF ACTION

## VICARIOUS COPYRIGHT INFRINGEMENT

72. Ms. Cornell repeats and re-alleges the allegations of paragraph 1 through paragraph 44 as if fully set forth herein.

73. At all times material hereto, Getty Images derived a direct financial benefit from the distribution of the Infringing Images and has failed to exercise its ability to supervise its customers, clients and subscribers and follow up to inform them of their infringing activities as it has a right to do under EULA and other agreements.

74. Upon information and belief, Getty Images has derived and continues to derive direct financial benefit from a variety of sources as a result of the infringement of Ms. Cornell's Infringing Images.

75. Getty Images' actions alleged herein constitute vicarious copyright infringement in violation of the Copyright Act, 17 U.S.C. §§101 *et seq*.

76. The conduct of Getty Images is intentional, willful, malicious, fraudulent and calculated to injure Ms. Cornell.

77. As a result of the copyright infringements described above, Ms. Cornell is entitled to relief including but not limited to, injunctive relief, and actual damages for the activities of Third Party Infringers.

## VIII.   FOURTH CAUSE OF ACTION

## VIOLATION OF THE DCMA (17 U.S.C. §1202(a))

(False Copyright Management Information)

78. Ms. Cornell incorporates by reference paragraph 1 through paragraph 44 above as if fully set forth herein.

79. 17 U.S.C. §1202(a) provides:

 (a) False copyright management information—No person shall knowingly, and with the intent to induce, enable, facilitate, or conceal infringement—

(1) provide copyright management information that is false, or

(2) distribute or import for distribution copyright management information that is false.

80. Upon information and belief, Getty Images includes a credit line on all subscriber and licensees' transmissions and its clients are required to carry the tag.  Getty Images has knowingly distributed to its subscribers, customers and clients ("Clients") false copyright

COMPLAINT – PAGE 17

1    management information by listing itself as *inter alia* the copyright owner of the Cornell

2    Drawings, the exclusive copyright licensor or distributor of the Cornell Drawings.

3        81.    The term "copyright management information" is defined at 17 U.S.C §1202(c) to

4    mean "any of the following information conveyed in connection with copies…or displays of a

5    work, including in digital form…." The statute includes title, author and copyright notice as

6    CMI. Getty Images knowingly inserted the false CMI when it placed the Cornell Drawings in its

7    database and on its web site.

8        82.    Examples of the false CMI appear on the Stewart Image Exhibit K, the Alessa

9    Images Exhibit H and on the images attached as Exhibit D. By way of illustration, Exhibit D,

10   page 5 through 9, Christine Cornell is listed as staff and copyright is listed in the name of Getty

11   Images with the date. In Exhibit D, page 10, Ms. Cornell is listed as a stringer for AFP and

12   copyright is listed to AFP 2012, although Ms. Cornell grated AFP a non-exclusive one time use

13   license on or about January, 1998. The Stewart Image appears on page 14. Although the image is

14   credited to Ms. Cornell, Getty Images/stringer appears as the name of the photographer.

15   Copyright states Getty Images 2004, although Ms. Cornell never sold any rights in and to the

16   Stewart Image to Getty Images and to date, Getty Images has produced no proof of order or

17   payment for the Stewart Image. Page 21 is a Cornell Drawing created in September 2009. Getty

18   images has listed AFP as the copyright owner, "2012 AFP." Page 27, a Cornell Drawing of

19   Madoff, created on November 3, 2009, is listed "Copyright 2012 AFP." Many other Cornell

20   Drawings from 2010 provide "Copyright AFP 2012."

21       83.    At no time did AFP or Getty Images own a copyright in any Cornell Drawings in

22   2012.

23

COMPLAINT – PAGE 18

## IX. PRAYER FOR RELIEF

WHEREFORE, plaintiff Ms. Cornell respectfully requests judgment as follows:

1. That the Court enter a judgment against defendant finding that the Infringing Images have infringed Ms. Cornell's copyright in the Cornell Drawings Cornell's Drawings and;

2. That the Court enter an order, pursuant to 17 U.S.C. § 502 enjoining and restraining defendants, and any persons or entities controlled directly or indirectly by defendants, from engaging in the following conduct:

    a. Reproducing, distributing, displaying or making any other infringing uses of the Cornell Drawings and the Infringing Images reproduced on Exhibit D;

    b. Making any uses of the Cornell Drawings and informing its licensees and subscribers pursuant to the terms of EULA and other agreements that they cease and desist from the use of the Cornell Drawings; and

    c. Assisting, aiding or abetting any other person or entity in engaging or performing any of the activities referred to in subparagraphs (a) and (b) above;

3. That the Court enter an order, pursuant to 17 U.S.C. §504 (b), declaring that the defendants hold in trust, as constructive trustees for the benefit of Ms. Cornell, all profits received by defendants from its infringing uses of the images listed in Exhibit D, and requiring defendant to provide Ms. Cornell a full and complete accounting of all gross revenues received by defendant form its licensing of the Infringing Images;

4. That the Court order defendants to pay damages to Ms. Cornell as follows:

    a. Actual damages suffered by Ms. Cornell as a result of defendant's infringements, including lost profits as a result of lost business from third party licenses of Getty images and potential third party licenses; and

The Hoffman Law Firm
330 W 72 Street
New York, NY 10023
T: 212-873-6200  F: 212-974-7245

      b. All profits of defendants that are attributable to those infringements of the Cornell Drawings, pursuant to 17 U.S.C. §504 (b).

5. That the Court order prejudgment interest on the amount of any awards to Ms. Cornell; and

6. That the Court grant to Ms. Cornell such other and additional relief as is just and proper.

DATED this 19th day of June, 2013

      s/ Barbara Hoffman, WSBA No: 12036
artlaw@hoffmanlaw.org

THE HOFFMAN LAW FIRM
330 W 72 Street
New York, NY 1023
Tel: 212-873-6200
Fax: 212-974-7245

Attorney for Plaintiff Christine Cornell